IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DANIELLE MELLANIE CHANDLER** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 15-CV-690-CVE -PJC |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Danielle Mellanie Chandler ("Chandler"), seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner" and "SSA") denying Chandler's application for disability insurance benefits Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The matter has been referred to the undersigned Magistrate Judge for report and recommendation. For the reasons discussed below, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a

disability claim. 20 C.F.R. § 404.1520.[1]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052 (quotation and citation omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

**Background**

Chandler was thirty-one years old on the alleged date of onset of disability and thirty-seven on the date of the Commissioner's final decision. [R. 1, 131]. She has a high school education (GED). [R.151]. She has previous experience as a telemarketer, customer service representative, supervisor, data entry, front desk clerk and cashier. [R.151, 167-173]. In her application, she claimed to have been unable to work since May 28, 2010, as a result of Graves disease and possible lupus. [R. 150].

**The ALJ's Decision**

In his decision, the ALJ found that Chandler met insured status requirements through September 30, 2015, and, at Step One, that she had not engaged in any substantial gainful activity since his alleged onset date of May 28, 2011. [R. 20]. He found at Step Two that Chandler had severe impairments of degenerative disc disease of the spine; thyroid disorder, depression, anxiety, leg and hip pain and ear impairment. *Id.*

At Step Three, he found that Chandler's impairments did not meet or medically equal any listing. [R. 21]. He concluded that she had the following residual functional capacity ("RFC"):

> [C]laimant has the residual functional capacity to lift and/or carry 10 pounds, stand and/or walk 4 hours out of an 8-hour workday and sit for about 6 hours out of an 8-hour workday. She could occasionally climb, bend, stoop, squat, kneel, crouch and crawl, operate foot controls and reach overhead, twist the torso, low noise, routine business and commercial okay, use of the right ear for telephone work, avoid cold work environment and with simple and routine work with slight limitation in contact with the public, coworkers and/or supervisors on a routine basis. The claimant is afflicted with a symptomatology from a variety of sources that produce mild to moderate chronic pain, which is of sufficient symptomatology as to be noticeable to her all the time but could remain attentive and responsive in a work setting and could carry out normal work assignments satisfactorily. She takes medication to relieve her pain but the medications does not preclude her from functioning in the sedentary level of exertion, and she would remain reasonably alert to perform required functions presented by her work setting. She would further find it necessary to change position from time to time to relieve her symptomology.

[R. 22].

At Step Four, the ALJ determined that, based on the RFC, Chandler was unable to perform any past relevant work. [R. 30]. At Step Five, he found that, considering Chandler's age, education, work experience and residual functional capacity, there are jobs existing in significant numbers in the national economy that Chandler could perform, including assembler, DOT Code 726.684-120, with 16,000 jobs in the regional economy, and machine operator, DOT Code 673.685-041, with 11,000 jobs in the regional economy. [R. 31].

Accordingly, the ALJ found that Chandler had not been under a disability from May 28, 2011, through the date of the decision. *Id.*

## Plaintiff's Allegations

On appeal, Chandler argues that (1) the ALJ erred in "refusing to consider plaintiff's obesity as a severe impairment and not considering the combined effect of obesity on plaintiff's spine and leg impairments;" (2) the ALJ failed to perform a proper credibility determination; and (3) the ALJ's pain evaluation failed to meet *Luna* standards.

## Analysis

### 1. Treatment of Obesity

In his Step Two analysis, the ALJ stated:

> Chandler also suffers from obesity; however, a review of the record does not reveal that the claimant's obesity would have more than a minimal limitation on the claimant's ability to perform basic work activities and is therefore considered a nonsevere impairment.

[R. 20]. Chandler asserts the ALJ overlooked the finding of the state agency physician, Katherine Scheirman, M.D., that her obesity was severe and further limits her exertional work capacity. [Dkt. #11 at 6].

This argument lacks merit. Despite finding that Chandler's obesity was "severe," Dr. Scheirman concluded that Chandler was capable of performing the exertional demands of *light* work. In contrast, the ALJ, while finding her obesity was nonsevere, limited Chandler to *sedentary* work. Given that the ALJ imposed a more restrictive RFC than the state agency physician did, Chandler has failed to identify any prejudice from the ALJ's failure to find her obesity was severe. *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) (ALJ's failure to give greater weight to a medical opinion not error where claimant is not prejudiced, because giving greater weight to the opinion would not have helped her).

Additionally, any error on the part of the ALJ at Step Two was harmless because the ALJ found other severe impairments that required him to proceed to Step Three. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (any error at Step Two became harmless "when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

### 2. Credibility Determination

Chandler contends the ALJ erred in his credibility determination. "[C]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations, when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks and citation omitted). Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks and citation omitted). "[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

In assessing Chandler's credibility, the ALJ stated:

5

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> * * *
>
> The description of the symptoms and limitations, which the claimant has provided throughout the record, has generally been inconsistent and unpersuasive and the claimant has not provided convincing details regarding factors that precipitate the allegedly disabling symptoms. The undersigned finds that, in consideration of all medical evidence, there appears to be some inconsistency regarding functional limitations and allegations, yielding to a partial allegation credibility assumption.

[R. 24, 29].

He supported his assessment by citing, *inter alia*, the following records:

- Chandler reported in her Function Report that she gets up each day, takes her pain medications, takes her children to school and spends the rest of the day rotating sitting and standing and trying to accomplish basic household chores like dishes and laundry. She dresses her four-year-old. She is able to dress herself, care for her hair, feed herself and use the toilet but has to take short showers and can't shave. She prepares food in the oven or crockpot so she doesn't have to stand. She does the dishes, laundry and vacuuming. She makes short stops at the store for items such as milk or bread, but her husband does the rest of the grocery shopping. [R. 25, R. 187-189 (Ex. 8E)]. The ALJ found that these daily activities were not limited to the extent one would expect, given Chandler's complaints of disabling symptoms and limitations.

- As previously discussed, state agency consultant Dr. Scheirman found Chandler has the RFC to perform light work, i.e., lift and/or carry twenty pounds occasionally and ten pounds frequently; stand for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. She was limited to occasional climbing ladders, ropes and scaffolds and stooping. Graves' disease, status post surgery with hypothyroidism and nonsevere. She was limited by her degenerative disc disease of the lumbar spine, and obesity further limited her abilities. [R. 24, R. 74-79 (Ex. 2A)].

- Another state agency consultant, Colleen Ryan, M.D., conducted an independent review of the medical evidence on May 2, 2013, and concurred with Dr. Scheirman's assessment. [R. 24, R. 81-90 (Ex. 4A)].

- Records from Ellen Zanetakis, M.D., a rheumatology specialist, show that claimant had a normal gait and no neurological deficits; her straight leg raise test was negative; and she had normal range of motion of all joints. [R. 26, R.296-99 (Ex. 5F)]. X-rays and bloodwork were ordered, but Chandler did not have the tests done, but made an appointment with a pain management physician. [R. 26, R. 296-99 (Ex. 5F), R. 328 (Ex. 9F), R. 345-48 (Ex. 11F)].

6

- The ALJ discussed statements submitted by several of Chandler's friends, who reported that Chandler struggles with daily chores due to pain in her legs; loses a lot of quality sleep due to pain and restlessness; has problems walking, sitting and standing due to neuropathy in her legs; cannot sit, stand or lie down for more than ten minutes due to pain; has emotional strain from not working and being able to care for her girls; her body has deteriorated as the years pass; she has trouble standing, sitting or walking for any length of time and bending, stooping and kneeling is totally out of the question; she is in pain ninety-five percent of the time; she cannot walk around the park with her children or push them on swings; she is saddened because she cannot play with her children; she is constantly in pain and needs help from others to get some things around the house performed. [R. 25, R. 217-223 (Ex. 16E)]. However, citing SSR 06-03p, the ALJ found that the friends' statements did not add to her credibility as they were subjective reports by friends of the claimant "who may be sympathetic to claimant's complaints of pain and procurement of Disability benefits." *Id.*

Support in the medical record is among the various factors properly considered in making a credibility determination. 20 C.F.R. §§ 404.1529, 416.929. In his decision, the ALJ discussed the portions of the records he believed contradict Chandler's subjective statements, thus satisfying his duty to support his credibility finding with substantial evidence. Furthermore, it is not the diagnosis of a condition, but the functional consequences of the condition that form the basis of a disability determination. *See e.g. Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (the mere diagnosis of arthritis says nothing about the severity of the condition); *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (unpublished) (diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000) (unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the cause of a claimant's condition). The record is devoid of any opinion from any treating provider suggesting any functional limitations beyond those imposed by the ALJ.

### 3. Pain Evaluation

Plaintiff asserts the ALJ's pain evaluation did not meet standards set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).[2] The undersigned concludes this assertion is not well founded.

The ALJ, in assessing claimant's allegations of pain, was required to consider both the objective medical evidence and other evidence, including information about the claimant's prior work record, her own statements about symptoms, evidence submitted by her treating or nontreating source and observations by agency employees and other persons. 20 C.F.R. § 404.1529(c)(3). A claimant's statements about intensity, persistence and limiting effects of her symptoms are evaluated in relation to the objective medical evidence and other evidence in reaching a conclusion as to whether she is disabled. 20 C.F.R. § 404.1529(c)(4). The claimant's symptoms, including pain, will be determined to diminish her capacity for basic work activities to the extent that her alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence. *Id.*

The ALJ concluded that the record failed to demonstrate the presence of any pathological clinical signs, significant medical findings or any neurological abnormalities that would establish the existence of a pattern of pain of such severity as to prevent Chandler from engaging in any work on a sustained basis. [R. 28]. In support of this conclusion, he cited an MRI of the lumbar spine dated October 7, 2011 [R. 28, R. 254 (Ex. 3F)]; records showing Chandler had received epidural steroid injections [R. 28, R. 305-318 (Ex. 7F), R. 330-343 (Ex. 10F); R. 352-372 (Ex. 13F)]; and records showing that she had surgery on July 1, 2013, for implantation of a trial spinal

---

[2] In *Luna*, the Tenth Circuit held that under 42 U.S.C. § 423(d)(5)(a), only a "loose nexus between the proven impairment and the pain alleged" need be established, and "[a]ccordingly, if an impairment is reasonably expected to produce *some* pain, allegations of *disabling* pain emanating from the impairment are sufficiently consistent to require consideration of all relevant evidence." *Id.* at 164 (emphasis in original).

cord stimulator implantation, and another surgical procedure for spinal cord stimulator implantation on November 1, 2013. [R. 28, R. 417-448 (Ex. 21F)]. After the trial spinal cord implantation, she reported a seventy percent reduction in her pain. [R. 29, R. 383 (Ex. 16F)]. She testified at the hearing that it was too early to tell if the November 26, 2013, hearing that it was too early to tell if the implantation of the second spinal cord stimulator would help. [R. 23, R. 48]. Furthermore, the ALJ observed that although Chandler had alleged various side effects from the use of the medications, office treatment notes did not corroborate those allegations. [R. 28, R.374 (Ex. 14F)].

>The ALJ stated:
>
>Regarding the claimant's allegations of totally disabling pain, her testimony was evaluated and compared with prior statements and other evidence. The pain experienced by the claimant is limiting but, when compared with the total evidence, it is not severe enough to preclude all types of work. The issue is not the existence of pain or other symptoms, but whether the symptomatology experienced by the claimant is of sufficient severity as to preclude her from engaging in all types of work activity.

[R. 28]. The ALJ observed that Chandler is able to care for her children, provide her own self-care, prepare easy meals and perform household chores with the help of the family. [R. 29]. Additionally, he found that the record did not contain any opinions from treating or non-treating physicians indicating Chandler is disabled or has limitations greater than those determined in his decision. *Id.* He concluded:

>The Administrative Law Judge does not discount all of the claimant's complaints; however, the evidence demonstrates that even though the claimant does have medically determinable impairments, none are severe enough to prevent the claimant from participating in substantial gainful activity, given the residual functional capacity set forth above. Given the objective medical evidence of record, the Administrative Law Judge finds that the claimant's residual functional capacity is reasonable, and that the claimant could function within those limitations without experiencing significant exacerbation of her symptoms.

*Id.* at 30.

Chandler also asserts that the ALJ failed to consider *all* evidence in the record to determine whether her pain is in fact disabling, and lists various records not specifically mentioned in the ALJ's decision. [Dkt. # 11 at 9-10]. However, the ALJ explicitly stated that he had carefully considered "all of the evidence," [R. 18], and the Tenth Circuit has often stated that the court takes the ALJ at his word when he states that he has considered all of the evidence. *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009).

The ALJ's decision is supported by substantial evidence, and the court "may neither reweigh the evidence nor substitute [its] discretion for that of the Commissioner." *Hamlin,* 365 F.3d at 1214 (quotation omitted).

## Conclusion

The undersigned finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision. Accordingly, the undersigned United States Magistrate Judge **RECOMMENDS** that the decision of the Commissioner finding Chandler not disabled be **AFFIRMED**.

## Objections

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation, but must do so by January 11, 2017. If specific written objections are timely filed, the District Judge assigned to this case will make a *de novo* determination in accordance with Rule 72(b). A party waives District Court review and appellate review by failing to file objections that are timely and sufficiently specific (the "firm waiver rule"). *Moore v. Astrue*, 491 Fed. Appx. 921, 923 (10th Cir. 2012) (unpublished), citing *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

**ENTERED** this 21st day of December, 2016.

_____
Paul J. Cleary
United States Magistrate Judge